[Civ. No. 20835. Third Dist. May 29, 1985.]

STOCKTON NEWSPAPERS, INC., Plaintiff and Appellant, v.
REDEVELOPMENT AGENCY OF THE CITY OF STOCKTON et al.,
Defendants and Respondents.

COUNSEL

Cavalero, Bray, Geiger & Rudquist, John B. Rudquist and William Parish for Plaintiff and Appellant.

Gerald A. Sperry, City Attorney, and Ronald J. D'Aiuto, Deputy City Attorney, for Defendants and Respondents.

OPINION

**PUGLIA, P. J.**—Plaintiff appeals from a judgment on the pleadings in favor of defendants. The appeal involves California's public meeting law (Gov. Code, § 54950 et seq.) known as the Ralph M. Brown Act (Gov. Code, § 54950.5; all subsequent references to sections of an unspecified code are to the Government Code). At issue here is whether a series of nonpublic telephone conversations, each between a member of the governing body of a local agency and its attorney, for the commonly agreed purpose of obtaining a collective commitment or promise by a majority of that body concerning public business, constitutes a "meeting" within the purview of the act. We conclude that such a series of telephone contacts does constitute a meeting within the act and, construed liberally as we are enjoined to do (Code Civ. Proc., § 452), that the complaint sufficiently alleges the occur-

rence of such a meeting and therefore, a violation of the act. Accordingly the judgment in defendants' favor must be reversed.

■ A motion for a judgment on the pleadings serves the same function as a general demurrer, i.e., the motion will be granted only if the pleadings, although uncertain or otherwise defective in form, fail to state a cause of action. (*Fosgate* v. *Gonzales* (1980) 107 Cal.App.3d 951, 957 [166 Cal.Rptr. 233]; *Tiffany* v. *Sierra Sands Unified School Dist.* (1980) 103 Cal.App.3d 218, 224-225 [162 Cal.Rptr. 669]; 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, §§ 161, 162, pp. 2816-2818; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 854, pp. 2456-2457.) ■ In reviewing an order granting a motion for judgment on the pleadings, we accept as true all material allegations in plaintiff's complaint. (*Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710, 714-715, fn. 3 [117 Cal.Rptr. 241, 527 P.2d 865]; *Fosgate, supra,* 107 Cal.App.3d at p. 957; *Tiffany, supra,* 103 Cal.App.3d at p. 225.) The underlying merit of these allegations is, of course, ultimately subject to proof by competent and convincing evidence. (See *Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 213-214 [197 Cal.Rptr. 783, 673 P.2d 660].)

Plaintiff is the publisher of the Stockton Record, a daily newspaper of general circulation in San Joaquin County. The Redevelopment Agency of the City of Stockton is a public body under the Community Redevelopment Law (Health & Saf. Code, § 33000 et seq.) and is a "local agency" within the meaning of section 54951. Defendants are members of the governing body of the redevelopment agency and collectively comprise the "legislative body" of the local agency within the meaning of section 54952.

Gerald Sperry is the attorney for the redevelopment agency. The complaint alleges that on the same day, "each of the defendants . . . participated in a one-to-one telephonic poll initiated by . . . Sperry . . . for the purpose of obtaining a collective commitment or promise by said defendants to approve the transfer of ownership" of real property forming part of a planned waterfront development. As might be expected, this telephonic poll was not conducted at either a regular or special meeting of the legislative body of the agency nor was plaintiff or the public given notice of it.

Alleging that similar private telephone conversations to obtain the agency's collective commitment had occurred in the past regarding other matters of public business and were likely to continue in the future, plaintiff seeks injunctive relief as well as a declaration that defendants' past and threatened

"deliberative and decision-making practices" violate the notice and open-meeting requirements of the Brown Act (see § 54960).

The trial court granted defendants' motion for judgment on the pleadings after concluding the complaint was insufficient to state a cause of action under the Brown Act. The court also declared on the merits in defendants' favor that "a series of one-to-one telephone calls conducted for the purpose of deciding or deliberating upon matters of public business [was] not a violation of the open meeting requirements of the Ralph M. Brown Act." Finally, although the issue was not raised by the parties, the trial court rested its ruling on the alternative ground that the alleged telephone conversations between individual members of the governing board of the agency and its counsel were confidential by virtue of the attorney-client privilege. (Evid. Code, § 950 et seq.)

I.

Defendants do not dispute that collectively they comprise a legislative body subject to the requirements of the Brown Act. (See §§ 54952, 54958.) Nor do they dispute that the proposed real property transfer is public business. (See § 54950.) The debate focuses on whether a series of telephone conversations as described in the complaint constitutes a "meeting" of the legislative body at which "action" was taken and therefore required to be "open and public." (See §§ 54952.6, 54953.) The word "meeting" is not expressly defined in the act.[1]

The purpose of the Brown Act is stated in section 54950: ". . . the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. *It is the intent of the law that their actions be taken openly and their deliberations be conducted openly.* [¶] The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created." (Italics added.) With only limited

---

[1]Defendants do not challenge plaintiff's standing to sue as an "interested person" under section 54960. In *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41 [69 Cal.Rptr. 480], we questioned the standing of a labor organization composed of professional newspaper men and women to bring a Brown Act suit. Because no objection was made and the complaint easily could have been amended to establish standing as county electors, we regarded as insignificant the possible mechanical defect in the pleadings. (At p. 46.) We do likewise here.

exceptions, "All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend . . . ." (§ 54953.)

The Brown Act contemplates that legislative bodies of local agencies shall conduct their business at either "regular meetings" or "special meetings." Regular meetings are to be held at the times provided by ordinance, resolution, or other appropriate rule of the legislative body. (§ 54954.) Special meetings may be called and noticed as provided in the act. (§ 54956.) (See also 63 Ops.Cal.Atty.Gen. 820, 821 (1980).)

Following a narrow judicial construction of the word "meeting" (*Adler* v. *City Council* (1960) 184 Cal.App.2d 763 [7 Cal.Rptr. 805]), the Legislature amended the Brown Act to make clear that legislative action within the act was not necessarily limited to action taken at a formal meeting. Section 54952.6, added in 1961, provides that " 'action taken' " means (1) "a collective decision made by a majority of the members of a legislative body," (2) "a collective commitment or promise by a majority of the members of a legislative body to make a positive or a negative decision," or (3) "an actual vote by a majority of the members of a legislative body when sitting as a body or entity, upon a motion, proposal, resolution, order or ordinance." (Stats. 1961, ch. 1671, § 3.)

Reviewing the effect of the 1961 amendments, the Attorney General observed there is "little, if any, strength left" to the decision in *Adler* v. *City Council, supra.* (42 Ops.Cal.Atty.Gen. 61, 67 (1963).) ▮ ▮ ▮ ▮ Since the law as amended "prohibits secret gatherings at which a majority of the members of the legislative body agree or agree to agree," it is highly unlikely that "a California court would persist in maintaining that a majority of the members of a local legislative body, without complying with the statute . . . could nevertheless meet together in a so-called 'informal,' 'study,' 'discussion,' [']informational,' 'fact finding' or 'pre-council' gathering for the avowed purpose of discussing items of general importance irrespective of whether the individual members of the legislative body intend or do not intend to take 'action' at such a gathering." (*Ibid.*)[2] Indeed, this court has since dealt with that very issue and resolved it consistently with the Attorney General's forecast.

In *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs., supra,* 263 Cal.App.2d 41, the members of a county board of supervisors

---

[2]Although not binding, opinions of the Attorney General are accorded "great weight" by the courts. (See *Joiner* v. *City of Sebastopol* (1981) 125 Cal.App.3d 799, 804-805 [178 Cal.Rptr. 299].)

were present at a luncheon at which the public business was discussed. This court deemed the informal luncheon discussion a meeting within the Brown Act even though no formal action was taken there (p. 51). The collective decisionmaking process consists of both "actions" and "deliberations" which must respectively be taken and conducted "openly" (§ 54950). Thus the meeting concept can not be confined exclusively to either action or deliberation but rather comprehends both and either (*id.,* at p. 47). Since deliberation connotes not only collective discussion but also the "collective acquisition and exchange of facts preliminary to the ultimate decision," the Brown Act is applicable to collective investigation and consideration short of official action. (*Id.,* at pp. 47-49; see also *Rowen* v. *Santa Clara Unified School Dist.* (1981) 121 Cal.App.3d 231, 234 [175 Cal.Rptr. 292].) "In this area of regulation, as well as others, a statute may push beyond debatable limits in order to block evasive techniques. An informal conference or caucus permits crystallization of secret decisions to a point just short of ceremonial acceptance. There is rarely any purpose to a nonpublic pre-meeting conference except to conduct some part of the decisional process behind closed doors. Only by embracing the collective inquiry and discussion stages, as well as the ultimate step of official action, can an open meeting regulation frustrate these evasive devices." (*Sacramento Newspaper Guild, supra,* 263 Cal.App.2d at p. 50; fn. omitted.)

■ The foregoing authorities make clear that the concept of "meeting" under the Brown Act comprehends informal sessions at which a legislative body commits itself collectively to a particular future decision concerning the public business. ■ Considering the ease by which personal contact is established by use of the telephone and the common resort to that form of communication in the conduct of public business, no reason appears why the contemporaneous physical presence at a common site of the members of a legislative body is a requisite of such an informal meeting. Indeed if face-to-face contact of the members of a legislative body were necessary for a "meeting," the objective of the open meeting requirement of the Brown Act could all too easily be evaded.

Defendants argue that because the alleged telephone conversations were conducted serially as opposed to simultaneously as in the case of a "speaker phone" conference call among a majority of the members, the case falls within the statutory exception to the open meeting requirement where less-than-a-quorum of the governing body is at any one time involved. ■ Section 54952.3 excludes from the "legislative bodies" to which the Brown Act applies, "a committee composed solely of members of the governing body of a local agency which are less than a quorum of such governing body." However, this exception contemplates that the part of the governing

body constituting less than a quorum "will report back to the parent body where there will *then* be a full opportunity for public discussion of matters not already considered by the full board or a quorum thereof." (65 Ops.Cal.Atty.Gen. 63, 65 (1982), italics in original; 63 Ops.Cal.Atty.Gen., *supra,* at p. 828; *Henderson* v. *Board of Education* (1978) 78 Cal.App.3d 875, 881 [144 Cal.Rptr. 568]; see also *Joiner* v. *City of Sebastopol, supra,* 125 Cal.App.3d at p. 805.) Such is not the case where a number of the members sufficient to constitute a quorum of the legislative body has already been informed and deliberated, albeit serially, on a matter of public business by the time the matter reaches the stage of public discussion. (63 Ops.Cal.Atty.Gen., *supra,* at p. 828.) Thus a series of nonpublic contacts at which a quorum of a legislative body is lacking at any given time is proscribed by the Brown Act if the contacts are "planned by or held with the collective concurrence of a quorum of the body to privately discuss the public's business" either directly or indirectly through the agency of a non-member. (65 Ops.Cal.Atty.Gen., *supra,* at p. 66.)

The foregoing discussion underlines the indispensability to plaintiff's complaint of the allegation that "each of the defendants . . . participated in a one-to-one telephonic poll initiated by . . . Sperry . . . for the purpose of obtaining a collective commitment or promise by said defendants to approve the transfer of ownership. . . ." The allegation, not a model of clarity, is arguably open to the interpretation that as the initiator of the telephonic poll, Sperry alone harbored the intent to secure the collective promise of defendants to approve the real property transfer in question. However, the allegation is also reasonably susceptible to the construction that each of the defendants, through the agency of Sperry, the governing body's attorney, concurred in the purpose of arriving at a collective commitment through the medium of the serially conducted telephonic poll. If a quorum of the members of the legislative body so intended to unite in an agreement to agree, a violation of the Brown Act would be established.

■ Defendants did not demur specially to plaintiff's complaint on the ground of ambiguity or uncertainty. (See Code Civ. Proc., § 430.10, subd. (f).) Failure to raise such a defect by special demurrer constitutes a waiver thereof. (Code Civ. Proc., § 430.80, subd. (a); *Collins* v. *Rocha* (1972) 7 Cal.3d 232, 239 [102 Cal.Rptr. 1, 497 P.2d 225]; *Drennan* v. *Star Paving Co.* (1958) 51 Cal.2d 409, 417 [333 P.2d 757]; *Central Surety & Ins. Corp.* v. *Foley* (1962) 204 Cal.App.2d 738, 741, 743 [22 Cal.Rptr. 504].) "If a complaint or any allegation of a complaint is capable of different construc-tions, that which the plaintiff gives it or which the court finds necessary to support the action will be given, in the absence of a special demurrer." (*Ryan* v. *Jacques* (1894) 103 Cal. 280, 286 [37 P. 186].)

■ Accordingly, we conclude that a series of telephone conversations conducted through an intermediary may, under a liberal construction of the circumstances here pled, constitute a meeting of the legislative body within the scope of the Brown Act.

Defendants' reliance on *Wilson v. San Francisco Mun. Ry.* (1973) 29 Cal.App.3d 870 [105 Cal.Rptr. 855], is misplaced. The case stands only for the proposition that a hearing before one administrative officer is not a meeting before a legislative body under the Brown Act because "meeting," as used in the act, "imports the involvement of more than one person." (At pp. 878-879.)

Defendants also misread *Old Town Dev. Corp. v. Urban Renewal Agency* (1967) 249 Cal.App.2d 313 [57 Cal.Rptr. 426]. There, the court held only that telephone contacts during which a majority of the members of the agency arrived at a collective commitment or promise to make a positive or negative decision would not *invalidate* action subsequently taken, and that injunctive relief would not lie because there were no allegations of continuing or threatened future violations of the act. (At pp. 320, 329, particularly fn. 9.)

In the present action, plaintiff does not seek to *void* the action taken by defendants but does allege the threat of continuing violations as a basis for injunctive as well as declaratory relief.

## II.

■ As an alternative basis of decision, the trial court held the telephone conversations between members of the redevelopment agency and its counsel were privileged under Evidence Code section 950 et seq. and thus excepted from the open meeting requirement.

■ The attorney-client privilege in the context of the Brown Act must be "strictly construed." (*Sacramento Newspaper Guild v. Sacramento County Bd. of Suprs., supra,* 263 Cal.App.2d at p. 58; *Sutter Sensible Planning, Inc. v. Board of Supervisors* (1981) 122 Cal.App.3d 813, 825 [176 Cal.Rptr. 342].) "Public board members, sworn to uphold the law, may not arbitrarily or unnecessarily inflate confidentiality for the purpose of deflating the spread of the public meeting law. Neither the attorney's presence nor the happenstance of some kind of lawsuit may serve as the pretext for secret consultations whose revelation will not injure the public interest." (*Sacramento Newspaper Guild, supra,* 263 Cal.App.2d at p. 58.) ■ Nothing in plaintiff's complaint indicates the communications here involved

legal consultation regarding a threatened or pending lawsuit (see *Sutter Sensible Planning, supra,* 122 Cal.App.3d at p. 825) or were otherwise a genuine occasion for attorney-client confidentiality. (See *Sacramento Newspaper Guild, supra,* 263 Cal.App.2d at p. 58.) On the face of the pleadings, the single purpose of the communications with the attorney is a *legislative* commitment, which as we have stated serves only to evade the central thrust of the public meeting law.

In sum, the alleged participation by defendants, a majority of the legislative body of the redevelopment agency, in a series of one-to-one non-public and unnoticed telephone conversations with the agency's attorney for the commonly agreed purpose of collectively deciding to approve the transfer of ownership in redevelopment project property constitutes a "meeting" at which "action" was taken in violation of the Brown Act. Since we conclude the complaint states a cause of action and reversal is required, we do not consider plaintiff's remaining contentions.

The judgment is reversed and the cause remanded to the trial court with directions to vacate its order granting and to enter an order denying defendants' motion for judgment on the pleadings and for further proceedings consistent with the views expressed in this opinion.

Evans, J., and Blease, J., concurred.