TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---------------------------------------------------------------
                                    :
        OPINION              :    No. 87-1205
                                    :
           of                   :    <u>MARCH 24, 1988</u>
                                    :
JOHN K. VAN DE KAMP         :
   Attorney General          :
                                    :
   CLAYTON P. ROCHE         :
Deputy Attorney General      :
                                    :
---------------------------------------------------------------


THE CALIFORNIA AIR RESOURCES BOARD has requested an opinion on the following questions:

Does the Ralph M. Brown Act require the deliberations of a hearing board of an air pollution control district, after it has conducted a public hearing on a variance, order of abatement, or permit appeal, to be conducted in public? If so, may the board deliberate in private after such public hearings with the board's legal counsel, or the board's attorney member?

CONCLUSION

The Ralph M. Brown Act does require the deliberations of a hearing board of an air pollution control district, after it has conducted a public hearing on a variance, order of abatement or permit appeal, to be conducted in public. The act prohibits the hearing board from conducting such deliberations in private with the board's counsel or the board's attorney member.

ANALYSIS

The statutes with respect to California's air pollution control program are found in Division 26 of the Health and Safety Code, commencing with section 39000 thereof. The primary responsibility for the control of non-vehicular emissions is vested in local and regional districts. Accordingly, air pollution control districts are established pursuant to section 40000 et seq. of the Health and Safety Code. There are county districts, unified districts, regional districts, and two large

special districts, that is the Bay Area Air Quality Management District and the South Coast Air Quality Management District.

There ". . . shall be, in each district, one or more hearing boards consisting of five members each, as specified in section 40801, appointed by the district board." (Health & Saf. Code, § 40800.) Section 40801 specifies that one member shall be an attorney, one member a professional engineer, one member from the medical profession, and two shall be public members.

Air pollution control districts issue permits with respect to articles, machines or contrivances which may cause issuance of air contaminants. (Health & Saf. Code, § 42300.) They may also issue variances from the law's strictures regarding the discharge of air contaminants. (Health & Saf. Code, § 42350 et seq.) They may also, after notice and hearing, issue abatement orders against air polluters. (Health & Saf. Code, § 42450 et seq.)

Hearing boards conduct public hearings with respect to the issuance, modification or revocation of abatement orders, permits and variances. (Health & Saf. Code § 40808; see also §§ 40232, 40500-40515; 42302, 42306-42309; 42350-42361; 42450-42452.) Section 40807 of the Health and Safety Code provides:

> "A hearing board may adopt rules for the conduct of its hearings. The rules shall be consistent with this division and, so far as practicable, shall conform to the rules for administrative adjudication by state agencies in Chapter 5 (commencing with Section 11500), Part l, Division 3, Title 2 of the Government Code. Where a district has two or more hearing boards, the rules shall be the same for all the hearing boards."

Sections 40820 through 40864 of the Health & Safety Code then provide for procedures of hearing boards, including the service of notice of hearings, the taking of all testimony under oath, the issuance of subpoenas, the issuance of decisions in writing and the reconsideration thereof, including the reasons for their decisions. Finally the statutes provide for judicial review by the superior court pursuant to section 1094.5 of the Code of Civil Procedures as to the boards' actions.

The basic question presented herein is whether the Ralph M. Brown Act, Government Code section 54950 et seq., requires the deliberations of a hearing board of an air pollution control district, after it has conducted a public hearing on a variance, order of abatement, or permit appeal, to be conducted in public.

The Ralph M. Brown Act requires "legislative bodies" of "local agencies" as defined therein to conduct their meetings in sessions open to the public unless expressly excepted in the act.

Thus, section 54953 of the Government Code, the main operative section of the Ralph M. Brown Act, provides:

"All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter. (Emphasis added.)

Additionally, section 54962 (added by Statutes of 1987, chapter 1320, sec. 6) adds further emphasis to these open meeting requirements. It states:

"Except as expressly authorized by this chapter, no closed session may be held by any legislative body of any local agency." (Emphasis added.)

"Local agency" for purposes of the act is defined in three section of the act, that is sections 54951, 54951.1 and 54951.7 of the Government Code. Section 54951 encompasses the traditional "local agencies" and provides:

"As used in this chapter, 'local agency' means a county, city, whether general law or chartered, city and county, town, school district, municipal corporation, district, political subdivision, or any board, commission or agency thereof, or other local public agency." (Emphasis added.)

An air pollution control district is a "district" within the meaning of section 54951.

"Legislative body" for purposes of the act is defined in four sections of the act, that is, sections 54952, 54952.2, 54952.3 and 54952.5 of the Government Code. Section 54952 provides what may be characterized as the original definition of "legislative body." It states:

"As used in this chapter, 'legislative body' means the governing board, commission, directors or body of a local agency, or any board or commission thereof."
[Language was added in 1961 to include local public officers while sitting ex officio on bodies unsupported by public funds.]

Section 54952.2 then defines "legislative body" to include bodies which are delegated any of the authority of local agency; section 54952.3 then defines "legislative body" to include "advisory" bodies of a local agency. Finally, and most significant to our inquiry, section 54942.5 then defines "legislative body" to include permanent boards or commissions of a local agency. It states:

"As used in this chapter 'legislative body' also includes, but is not limited to, planning commissions, library boards, recreation commission, and other permanent boards or commissions of a local agency." (Emphasis added.)

A hearing board of an air pollution control district would fall within the terms of this last definition of "legislative body." It is a permanent board of a "local agency," that is, the district. (§ 54951.7, supra.)

The express exceptions to the open meeting requirements of the Ralph M. Brown Act are found in six sections, that is, sections 54953.1, 54956.7, 54946.8, 54956.9, 54957 and 54957.6 of the Government Code. Section 54953.1 provides an exception to permit members of a legislative body to testify in private before a grand jury. Section 54956.7 provides an exception to permit closed sessions to discuss whether an applicant for a license, who has a criminal record, has been rehabilitated. Section 54956.8 provides an exception to discuss real estate transactions with the legislative body's negotiator. Section 54956.9 provides the so-called "litigation exception" to permit a legislative body to meet in private to discuss "pending litigation", as defined therein. Section 54957 provides the so-called "personnel exception," which permits closed session to discuss the appointment or dismissal of public employees, and also to discuss specified public security matters. And finally, section 54957.6 provides an exception to permit a legislative body to confer with and instruct its labor negotiator with respect to labor negotiations.

Thus no express exception from the open meeting requirements of the Ralph M. Brown Act would appear to encompass the deliberations of a hearing board of an air pollution control district after hearings on applications for variances, permit appeals, or considering orders of abatement.

At this juncture we note that as a general proposition, the "deliberations" of a "legislative body" of a "local agency" fall within the open meeting requirements of the act. No action need be taken at the meeting. This office reached this conclusion as early as 1963, based upon the 1961 amendments to the act. (See 42 Ops.Cal.Atty.Gen. 61 (1963).) Subsequently, case law also put to rest any contention that the open meetings requirements of the act apply only to meetings at which action is taken. (Stockton Newspapers, Inc. v. Redevelopment Agency (1985) 71 Cal.App.3d 95, 101-103, and cases cited.) As stated by the court in the Stockton Newspaper, Inc. case, drawing upon the reasoning of the court in the earlier case, Sacramento Newspaper Guild v. Sacramento County Bd. of Supers. (1968) 263 Cal.App.2d 41:

> ". . . The collective decision making process consists of both 'actions' and 'deliberations' which must respectively be taken and conducted 'openly' (§ 54950). Thus the meeting concept can not be confined exclusively to either action or deliberation but rather comprehends both and either (id., at p. 47). Since deliberation connotes not only collective discussion but also the 'collective acquisition and exchange of facts preliminary to the ultimate decision, 'the Brown Act is applicable to collective investigation and consideration short of official action. (Id., at pp. 47-49; see also Rowen v. Santa Clara Unified School District (1981) 121 Cal.App.3d 231, 234 [175 Cal.Rptr. 292].). . . ."

From the foregoing discussion of the Ralph M. Brown Act, it would seem to be clear that a hearing board of an air pollution control district, being within the definition of a "legislative body" (Gov. Code, § 54952.5) of a "local agency" (Gov. Code, § 54951), must hold its deliberations with respect to permits, orders of abatement and variances in public. There is no express exception in the Ralph M. Brown Act to permit closed session on such matters. Therefore, sections 54953 and

54962 of the Government Code and the case law would appear to provide negative responses to the question presented.

A number of arguments have been suggested that hearing boards of air pollution control districts should be excepted from the open meeting requirements of the Ralph M. Brown Act either as a matter of statutory construction or by implication. These arguments are predicated primarily on the premise that the sole reason for the existence of these hearing boards is to act in a quasi-judicial or adjudicative capacity. The argument is that the Legislature could not have intended that they fall within the scope of the act, since they perform no legislative or policy making functions, and are really like courts. [1]

For example, it has been suggested that hearing boards should not be included within the definition of "legislative body" set forth in section 54952.3, supra. It is urged that unlike the permanent boards and commissions enumerated therein (planning commissions, library boards, recreation commissions), hearing boards exercise no policy making decisions, but are solely adjudicatory bodies. Accordingly, they were not intended to be included within the phrase "and other permanent boards or commissions of a local agency" under the "ejusdem generis" rule of statutory construction.[2]

In response to this suggestion we point out that "'[i]t is to be remembered that the doctrine of ejusdem generis is but a rule of construction to aid in ascertaining the meaning of the legislature, and may be used to carry out, but not defeat the legislative intent.'" (People v. Silva (1940) 16 Cal.2d 714, 721.) Furthermore, ambiguity in a statute is the general prerequisite for construction (See, e.g., Leffel v. Municipal Court (1976) 54 Cal.App.3d 569, 572.)

We see no ambiguity in section 54952.5. It defines "legislative body" to include any permanent board or commission of a "local agency." The functions of the permanent body would therefore be immaterial. Furthermore, as stated in Rideaux v. Torgrimson (1939) 12 Cal.3d 633, 636:

---

[1] We note that this appears to be correct as a matter of procedure. This argument, however, may mask the fact that hearing boards still perform executive or administrative functions of air pollution control districts as a matter of first instance, and not by way of appeal from the action of other officers of the district. (See Health & Saf. Code, § 42340 with respect to all applications for variances and § 42451 with respect to orders for abatement.) Accordingly, the assertion that hearing boards are analogous to courts may be somewhat inaccurate and misleading.

[2] "[W]here general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." (Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters (1979) 25 Cal.3d 317, 331, fn.10)

> "When a legislative body enacts a statute which prescribes the meaning of particular terms used by it, that meaning is binding upon the courts." (See also, e.g., In Re Marriage of Stephens (1984) 156 Cal.App.3d 909, 913.)

In short, the Legislature has provided no exception for hearing boards in section 54952.5. Accordingly, any argument that hearing boards should not be included within this definition should be addressed to the Legislature.

Additionally, to restrict the meaning of section 54952.5 would, in our view, defeat the general intent of the Legislature in enacting this section. The purpose of its enactment was to expand the scope of the meaning of "legislative body" in the act. The section was enacted as part of the 1961 amendments to the Ralph M. Brown Act, which repudiated much of the court's holding in Adler v. City Council (1960) 184 Cal.App.2d 763. Adler gave a very restrictive interpretation to the act and held, inter alia, that the act was not applicable to a planning commission on the grounds that the act "was not meant to apply to planning commissions or other bodies of an advisory nature." (42 Ops.Cal.Atty.Gen. 61, 65 (1963), supra). At that time the act defined "legislative body" only in section 54952 to include governing boards or boards or commissions thereof. Accordingly, the general purpose of the enactment of section 54952.5 was to expand the act to include any permanent board or commission of a local agency, irrespective of its functions. The inclusion in the section of planning commissions, recreation commissions and library boards was, in our view, merely illustrative of included boards, and was not intended in any way to limit the scope of the section.

In the same vein that the sole reason for the existence of hearing boards is to conduct hearings, that is, to act in a quasi-judicial or adjudicative capacity, it is also urged that the law specifically provides that hearing boards are to conduct their hearings in accordance with the State Administrative Procedure Act. (See, Health & Saf. Code, § 40807, supra.) This, it is urged, is an indication that the Legislature intended that hearing boards should be permitted to deliberate in private just as state agencies may do under the similar Bagley-Keene Open Meeting Law (Gov. Code, § 11120 et seq.). Section 11126, subdivision (d) of that law provides an exception to open meetings for "state bodies" and provides:

> "(d) Nothing in this article shall be construed to prohibit a state body from holding a closed session to deliberate on a decision to be reached based upon evidence introduced in a proceeding required to be conducted pursuant to Chapter 5 (commencing with Section 11500) of Part l of Division 3 of Title 2 or similar provision of law."

In essence, it is suggested that to apply the open meeting requirements of the Ralph M. Brown Act to the deliberations of hearing boards is the equivalent of requiring a multi-judge court such as the California Supreme Court to conduct its deliberations in public. It is argued that such requirement has a chilling effect upon such deliberations and the free give and take between board members which they believe to be necessary to reach and write a proper decision on the merits of each individual case.

It is also urged that the Legislature could not have intended the Ralph M. Brown Act to apply to the deliberations of hearing boards since certain inconsistences exist between the Health & Safety Code and the Ralph M. Brown Act and the State Administrative Procedure Act. It is pointed out that the Health and Safety Code allows the issuance of interim and 90-day variances without public notice (§§ 40824, 40825) and the issuance of variances without notice or hearing (§ 42359.5.) It is also pointed out that the State Administrative Procedure Act permits board members to vote by mail (Gov. Code, § 11526), which is not permitted under the Ralph M. Brown Act. (See Stockton Newspapers, Inc. v. Redevelopment Agency (1985) 171 Cal.App.3d 95.)

In response to the suggestion that the deliberations of hearing boards should be excepted from the open meeting requirements of the Ralph M. Brown Act by virtue of sections 40807 of the Health and Safety Code, supra, which incorporates by reference section 11500 et seq. of the Government Code, we believe this demonstrates just the opposite. Where the Legislature wants to provide such an exception, it knows how to do so as it has specifically done for "state bodies" in the Bagley-Keene Open Meeting Law. As stated in Safer v. Superior Court (1975) 15 Cal.3d 230, 237-238: "its [the Legislature's] articulation of specific statutory authorization in that situation points to the absence of such authority in the instant case."

Accordingly, had the Legislature intended an exception for air pollution control hearing boards, it would have said so. Furthermore, the Health & Safety Code only provides that hearing boards shall follow the State Administrative Procedure Act "so far as practicable." (Health & Saf. Code, § 40807, supra.) It does not mandate complete adherence thereto. This fact would also provide a complete answer to any contention as to possible inconsistences between the Health and Safety Code and the State Administrative Procedure Act. And finally, it is to be noted that nothing in sections 11500 et seq. of the Government Code even discusses any right to conduct deliberations in private. Such right is solely the product of the Bagley-Keene Open Meeting Law, not of the State Administrative Procedure Act.

With respect to the argument that inconsistencies exist between Health and Safety Code hearing procedures, and the Ralph M. Brown Act, we believe this presents merely a matter of statutory construction. The acts should be harmonized when possible. Where this cannot be done, a determination as to which act is to take precedence must be made in each instance.

Accordingly, in our view, the fact that hearing boards of air pollution control districts act only in a quasi-judicial capacity does not remove them from the requirements of the Ralph M. Brown Act. The act provides no exception for boards and commissions so acting. Statutes are to be literally applied according to their plain language unless to do so would produce absurd results or would defeat the manifest intention of the Legislature. (Brown v. Superior Court (1984) 37 Cal.3d 477, 485; California Highway Patrol v. Worker's Compensation Appeals Board (1986) 178 Cal.App.3d 1016, 1024.) We discern nothing in the Ralph M. Brown Act manifesting any legislative intent to exclude air pollution control hearing board deliberations from the open meeting requirements of the act. Also, it is our understanding that virtually all (with one major exception) air pollution control hearing boards do follow the open meeting requirements of the act with respect to their deliberations. They have learned to operate within the act and follow it. Accordingly,

although it may present some difficulties to do so, it cannot be said that it is absurd to require them to do so.

This conclusion is in accord with the historical position of this office. In 57 Ops.Cal.Gen. 189 (1974) we concluded that there was no exception in the Ralph M. Brown Act for the deliberations of a "legislative body" when it was acting in a quasi-judicial or adjudicative capacity. In that opinion we opined that a county board of education could not deliberate in private when it was deciding the matter of school district attendance of a particular student. In so concluding we cited, inter alia, prior letter opinions of this office in which we had already concluded that the deliberations of county air pollution control district hearing boards were not excepted from the requirements of the Ralph M. Brown Act.

We reaffirm our prior opinions and conclude that, as a general proposition, the deliberations of hearing boards of air pollution control districts fall within the open meeting requirements of the Ralph M. Brown Act.

The subsidiary question we are asked is whether, if this is the case, air pollution control district hearing boards still may deliberate in private with the board's legal counsel, or with the board's attorney member. This raises the issue as to whether section 54956.9 of the Government Code on pending litigation could be construed to constitute an authorization to deliberate in private after hearing a variance, permit or abatement order matter in public session. Section 54956.9, added by Statutes of 1984, chapter 1126, and amended in 1987 by Statutes of 1987, chapter 1320 by the addition of the first two sentences in paragraph two, replaces the Evidence Code lawyer-client privilege which was previously held to permit closed sessions despite the Ralph M. Brown Act's silence in this respect. (See generally Sacramento Newspaper Guild v. Board of Supervisors, supra, 263 Cal.App.2d 41.)

Section 54956.9 provides in full as follows:

"Nothing in this chapter shall be construed to prevent a legislative body of a local agency, based on advice of its legal counsel, from holding a closed session to confer with, or receive advice from, its legal counsel regarding pending litigation when discussion in open session concerning those matters would prejudice the position of the local agency in the litigation.

"For purposes of this chapter, all expressions of the lawyer-client privilege other than those provided in this section are hereby abrogated. This section is the exclusive expression of the lawyer-client privilege for purposes of conducting closed-session meetings pursuant to this chapter. For purposes of this section, litigation shall be considered pending when any of the following circumstances exist:

"(a) An adjudicatory proceeding before a court, administrative body exercising its adjudicatory authority, hearing officer, or arbitrator, to which the local agency is a party, has been initiated formally.

"(b) (1) A point has been reached where, in the opinion of the legislative body of the local agency on the advice of its legal counsel, based on existing facts and circumstances, there is a significant exposure to litigation against the local agency.

"(2) Based on existing facts and circumstances, the legislative body of the local agency is meeting only to decide whether a closed session is authorized pursuant to paragraph (1) of this subdivision.

"(c) Based on existing facts and circumstances, the legislative body of the local agency has decided to initiate or is deciding whether to initiate litigation.

"Prior to holding a closed session pursuant to this section, the legislative body of the local agency shall state publicly to which subdivision it is pursuant. If the session is closed pursuant to subdivision (a), the body shall state the title of or otherwise specifically identify the litigation to be discussed, unless the body states that to do so would jeopardize the agency's ability to effectuate service of process upon one or more unserved parties, or that to do so would jeopardize its ability to conclude existing settlement negotiations to its advantage.

"The legal counsel of the legislative body of the local agency shall prepare and submit to the body a memorandum stating the specific reasons and legal authority for the closed session. If the closed session is pursuant to subdivision (a), the memorandum shall include the title of the litigation. If the closed session is pursuant to subdivision (b) or (c), the memorandum shall include the existing facts and circumstances on which it is based. The legal counsel shall submit the memorandum to the body prior to the closed session if feasible, and in any case no later than one week after the closed session. The memorandum shall be exempt from disclosure pursuant to Section 6254.1.

"For purposes of this section, 'litigation' includes any adjudicatory proceeding, including eminent domain, before a court, administrative body exercising its adjudicatory authority, hearing officer, or arbitrator."

Litigation exceptions to the Ralph M. Brown Act's open meeting requirements, however, must be strictly construed. (Stockton Newspapers, Inc. v. Redevelopment Agency, supra, 171 Cal.App.3d 95, 104.). A cursory reading of this section demonstrates that it could not provide hearing boards with authority to deliberate in private. This section is to be applied on a case by case basis based upon the appraisal of "existing facts and circumstances" by an agency's legal counsel. Admittedly, any quasi-judicial proceeding before the hearing board itself may eventually be subject to judicial review through administrative mandamus to the superior court brought pursuant to section 1094.5 of the Code of Civil Procedure. However, this mere possibility in our opinion would not satisfy subdivision (b) (1) of the section, the only subdivision from which one might argue for the existence of such authority. Otherwise, the exception would swallow up the rule and a new "closed

session" exception would arise for quasi-judicial boards, or for any board while acting quasi-judicially. Stated otherwise, in our view the possibility that a petition for judicial review by mandate might be filed is not sufficient facts and circumstances to conclude there is a significant exposure to litigation under subdivision (b).

Furthermore, to conclude that an exception would exist because there is always the possibility of judicial review of a board's decision would be tantamount to saying that any legislative body of a local agency may meet in private on any matter, since, if they do not proceed in the manner required by law, or somehow abuse their discretion in so doing, they are subject to a lawsuit to correct their action. Such a mere possibility is not what is contemplated in section 54956.9.

In so concluding, we do not wish to intimate that in appropriate circumstances, and on an individual case basis, section 54956.9 may not be available to a hearing board. However, this must be based upon appropriate advice of the board's legal counsel, as specified in section 54956.9. (See generally, 69 Ops.Cal.Atty.Gen. 232, 235-236 (1986) for a discussion of the operation of this section.)

With respect to whether the hearing board may deliberate in private with the attorney member of the board, we conclude that it may not do so. It is patent from reading section 54956.9 that the "litigation exception" applies only to closed sessions with and upon the advice of the board's counsel. The county counsel's office is legal counsel for county air pollution control districts. (See Health & Saf. Code § 40809). The South Coast Air Quality Maintenance District has specific authority to hire counsel. (Health & Saf. Code § 40483.) Unified districts would also utilize the county counsels offices, as appropriate. (Health & Saf. Code § 40157.) Other types of air pollution control districts are authorized to hire necessary officers and employees, which would include legal counsel. (See Health & Saf. Code, §§ 40229, 40330.) In short, the fact that one board member may be an attorney does not make that board member the board's counsel. Furthermore, the attorney-board member could not have greater rights to deliberate in private with the board than does the board's own duly appointed counsel. The conditions for closed sessions would still be applicable and still be the same.

Accordingly, in summary, we conclude that the open meeting requirements of the Ralph M. Brown Act do apply to the deliberations of hearing boards of air pollution control districts after they have conducted a public hearing on a variance, order of abatement or permit appeal. We further conclude that the litigation exception cannot be construed to confer upon these boards authority to conduct such deliberations in private either with the boards' counsel or the boards' attorney member. To conclude otherwise would, we believe, fly in the face of the most recent legislative direction to be found in the act, that is section 54962, to the effect that "no closed sessions may be held by any legislative body of any local agency" "except as expressly authorized" by the act. If there is to be any change in the law for air pollution control district hearing boards, it is one for the Legislature to make.

\* \* \* \*